Good morning, Your Honors. My name is Lisa Anderson, and I'm here on behalf of the Las Vegas Metropolitan Police Department, Detective James Segura and Sergeant Signorello. The district court in this case made a mistake of law when it failed to grant qualified immunity to these officers because these officers, borrowing from Ashcroft v. Al Kidd, could not have known that the actions that they took that night under the circumstances that were prevented were clearly wrong in light of a well-established law. Now, the case law that we've cited throughout the brief says that these cases are very fact-specific, and as we can see from the case that presents a similar fact pattern, because this case is unique, here we do have a case that involves Well, but if I could, I'd just stop you a little bit. In this case, if you're going to win on summary judgment on qualified immunity, you've got to win on the facts as articulated by your opposition, right? Absolutely, Your Honor. In fact And as a result, some of the things that the police may want in those facts are not necessarily in there, because the police facts are somewhat different than those that are alleged by the plaintiff, correct? Understood. And in fact, so if I take through the initial stop, just looking at those facts, as I understand what the plaintiff has argued, the plaintiff walked through the lobby, she was not provocatively dressed, she rejected the police officer's solicitation, she had a phone in her hand, and she was accompanied by her friend. Those are the facts as articulated by the plaintiff. And so therefore, how in the devil am I going to say that there's reasonable suspicion on those facts? Because these aren't beat cops. These are experienced vice detectives. But beat cops, nonetheless, if somebody, of course, I never provocatively dress, I got too much to cover. But the honest truth is, it doesn't seem to me that any of those facts, I've got a good looking wife, I'm having a tough time saying if she was in that hotel, they'd have reasonable suspicion to stop her. Understood, Your Honor. And so, you know, my point is that this wasn't a patrol operation. This was a very large vice enforcement action that was ongoing on that particular evening, and it's viewed against the backdrop of an ongoing vice investigation involving the acts of suspected pimp by the name of Wheelchair Mike. Well, but that's including your facts in the middle of this. And as I said, I'm having a tough time understanding when I'm really looking at the plaintiff's facts, that that ought to be thrown in the mix. The plaintiff's facts are as simple as I put down here, and I don't think there's any reasonable suspicion on those facts. So while you may be arguing very well on their motion, if they were moving for summary judgment, which they did, especially as to one of the claims, then I think you get a break. But on this motion, I'm a little worried. So I'll let you argue about it, but that's a worry to me. Sure. And I would respectfully disagree with the notion that even though we have to take the plaintiff's facts as true, and as she submitted them, it's still an undisputed fact, and in fact it's a fact that's mentioned in the court's order that these vice operations were ongoing, that we did have, you know, that overarching concern with the officers, and that more importantly in this case we had the M factor, which was that the plaintiff or the appellee, Ms. Goodman, was actually accompanied at the time of this reasonable suspicion stop by the wife of the very suspected pimp who was known to be doing the, you know, controlling the prostitution acts at the Cosmopolitan Hotel and Casino. On top of that, these very officers, the appellants, they had arrested M four nights previously for soliciting prostitution. Now, while on the one hand you can take all of those facts in isolation and say it's not uncommon for a woman to be provocatively dressed or dressed in a manner or dressed in any manner in a hotel. But she was not provocatively dressed on their facts. Well, Your Honor, I think that, again, that's a, you know, she's denied, she's disputing what the police officers say as far as that's concerned. Well, but that's a jury question. On this motion, she was not provocatively dressed. All right. Well, Your Honor, assuming that all of those facts are correct, and viewing those facts in the light most favorable to the plaintiff, which is what we have to do here today, what these officers did know was that, you know, the law allows for them to make reasonable suspicion stops in a situation where there's less than probable cause. It's a lower threshold. They also know that the courts allow them to use their experience and their training in order to view those facts, the things that they're seeing, and come to reasonable inferences about what they mean. They use their experience and training to proposition her, and she blew them off. Yes, Your Honor. And that adds something to the picture, too? I think that what it adds to the picture is that, you know, that they don't have to look for actual solicitation. They don't have to see an element of a specific crime. They're just looking for the hallmarks of criminal activity. That's the Terry v. Ohio case. I mean, in Terry v. Ohio, they didn't see the people committing the burglary. They didn't see them doing the elements of the burglary. They simply saw them doing things that were suspicious, that gave them reason to believe that criminal activity could be underfoot. So it's suspicious to walk through a hotel with a friend, when a guy tries a proposition, you say no, that's suspicious? It's suspicious in the sense that, you know, first of all, you know, as we've articulated in our brief, these officers are also suspicious. Didn't their experience say no means no? Again, it's not the rebuff of the solicitation that was at issue here. It was the fact that they recognized her companion as being the wife of the pimp who was believed to be directing those activities at that hotel casino, and that she was a known prostitute. And I don't mean known in the sense that they would run wants and warrants, but known in the sense that they had actually arrested her for soliciting prostitution. So that case that she was arrested on four days earlier was dismissed? It was dismissed, but not at the time of this stop. At that time, they knew. That may have been a bad stop, too. It could have been a bad stop, but I don't, you know, I don't, at that point in time, this appellant didn't believe it was, because she was a woman who was with someone that had been previously arrested for prostitution that week, and a woman who was married to wheelchair Mike. Yes, who was supposedly on the premises that night and was directing the prostitution activities. And then, Your Honors, I would like to reserve a little time for rebuttal, if possible, but I do want to answer your question. Well, all I was trying to say is, based on the facts on the arrest, it doesn't seem to me that one can say, based on their facts, without me stating them all out there, that absolutely qualified immunity. I mean, I don't think that's a good thing. I mean, they were detained two hours. They grabbed her arm, didn't ask her anything. They say, give me your damn phone. They seize the phone. They show the police badges, remove her from the casino floor. They take the purse without permission. That's their idea of a good time. They ask her a few questions, don't even seem interested in the answers. I mean, I can go on down. It just doesn't seem to me that, in that instance, I can say, well, qualified immunity. And I understand, Your Honor, and you have to understand my perspective, which is I am in large part standing here with both arms tied behind my back, based on the grant of summary judgment. But at the same time, we have to go back to the issue of the law wasn't clearly established that under these circumstances, that what these particular officers was doing would violate the Constitution, under the backdrop of this vice operation, where there are a number of cases. I'm just suggesting because it's a vice operation, it's different than any other initial stop or any other arrest? I'm not suggesting that it's different than any other stop, but I think that because these cases are fact specific, you have to look at, for example, when you're discussing the notion of the officers taking the purses or taking the cell phone. There are a number of cases, you know, we've cited them, Florida v. Royer, U.S. v. Miles that say that they can do some more intrusive things when there's concerns for officer security and safety. These are undercover officers. They're dealing in an environment where they're not beat cops, this isn't a lone act of prostitution, this is a pimp-driven business where there are very serious concerns for their safety and their identity. And so taking the cell phone away, taking the purse away, taking them off of the casino floor are all consistent and not necessarily so intrusive in order to protect them in the context of that larger vice operation. And I see that I'm out of time. I appreciate your time this morning. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Robert Nersessian for Chantil Goodman and with me here today is co-counsel John Graves. When we just heard the argument that was given, what we heard was because these are experienced vice cops, they're able, where other police officers couldn't, to rely on a hunch. But your facts that you need to argue against are not necessarily the same as her facts. In other words, if in fact you're arguing against qualified immunity, then you have to take her facts, don't you? To argue against qualified immunity as being denied at this point and staying denied at this point, I would have to argue against her facts. I agree with that, but what about with the summary judgment that you got? As in that time, you have to say, well, given her facts, I should get summary judgment. Yes, Your Honor, as to the summary judgment for a 1983 violation, and if you desire to carve out an exception for qualified immunity, then there should be at most at this stage an evidentiary hearing to determine qualified immunity only without upsetting the judgment, not only because that's not what this appeal is supposed to be about in an interlocutor fashion, but also because Judge Dew's decision was well-reasoned. Well, but just a minute, it seems to me that if we're really going to talk about the summary judgment itself, if it's in front of us, then at that point in time, I've got to find it in tricks, in extrix, well, whatever that word is, combined with the other issue. And I don't see how on this particular record, given that qualified immunity is really the good defense, even to the summary judgment that you have received, I'm not talking the state issues now, I'm just talking the federal issues, that it isn't intertwined, and therefore, I'm saying to myself on that summary judgment, it seems as if I have to have her testify in order to grant you or continue to grant you the summary judgment. Then let's go to the defendant's facts, not my facts, not Ms. Goodman facts, the defendant's facts, and get away from also just for the moment the idea that all we're talking about here is the initial stop. Okay, let's go to detention. The detention was for an hour and 49 minutes. Just a minute. As I understand her facts, they are that she was detained for an unknown amount of time. An unknown amount of time is not a fact, Your Honor. Well, it's as good as your guess that it's an hour or two. No, it isn't. I apologize, Your Honor, but it is not. It is not as good of a guess. This is an I don't know versus positive testimony as to what the time frame was, supported by a collaborating witness, and That sounds like good fact testimony, but I'm still having a tough time suggesting, given that the standard on this particular issue is, let me look at that standard, in addressing whether a detention is too long from United States versus Sharpe, in duration, to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant, and then in Washington v. Lambert, as might be the case, to determine whether the time frame is fact-specific. So if I say the cops say it's an unknown amount of time, and Goodman and M. became belligerent when asked to give up the phones and leave the casino, and then they were escorted to the security room, and then the police officers regularly moved other people in the casinos to the office, 18 people were moved, Miranda rights weren't given, nobody was handcuffed, nobody was restrained, other than a grabbing of the arm, we're not sure exactly about that, no weapons drawn, and they contend that at some time their own custody ended, and the casino custody began. At that point in time, I'm saying to myself, seems like a question of time, and I'm not sure that I'm going to be able to answer that. And I think that's a question that, in fact, some jury ought to decide. Your Honor, were that the case, perhaps you would get agreement from me. But going backwards off of what you just stated, there is no evidence that the police were ever extricated at any level from this detention. And as noted in our testimony, the testimony by the case that was brought at that time was that Miranda was a member of the Cosmopolitan, and as she was exiting by her personal, the casino security, right? Yes, but the time in the room was one hour and 49 minutes, testified to with the support of reasonable circumstantial physical evidence, coupled with no statement of time by the police. The cases are cited. To defeat a motion for summary judgment, and here... So all you're saying is, you don't think, I don't know exactly the time, but this is what happened is not contradictory. Is that what you're telling me? I don't know does not contradict the statement of well over an hour. I understand how well you want to boil it down. Yes. Okay. I'm just saying to you, we've got a lot of facts here, and I'm saying to myself, you know, maybe 12 people ought to decide this. Your Honor, I would suggest that we don't have a lot of facts here. Indeed, what we do have is a lot of construct by the defendants. You just stated, and they wrote, that Ms. Goodman was belligerent. We cited line and verse the testimony that made her belligerent. What made her belligerent is when the police officer tried to grab her phone, she stepped back. That was what they call combative and belligerent. And you can't say that their own testimony shows that they were combative and belligerent, not Ms. Goodman. Like a great jury argument. It's not only a great jury argument. It is what they said happened. And you can't say that somebody is combative by stepping away from somebody. Their own testimony presents the antithesis of combativeness. And presenting the antithesis of combativeness is certainly unconstitutional. It is not a basis for finding a fact that would support a summary judgment. Moving to the other issue here on this is that there is the summary judgment on the state cause of action, and that is truly not before the court. The defendants state, oh, she just equivocated. Judge Due equalized that with qualified immunity, and she did not. I think your argument is pretty strong on, well, I don't know what we have to do with state judgments based on whether the state, if you will, qualified immunity, quote, unquote, is appropriate. So I didn't ask you about that. I understand. But all I was trying to get to are the federal actions that I think are in front of me. My colleagues might have other questions. I just, counsel, I do. I would have thought you would be arguing today that actually this court, and maybe you are, that this court lacks jurisdiction to review the district court's grant of summary judgment in your client's favor. Is that your position, or is it your position that we in fact do have? That was a position that I presented to Judge Smith, and it appears to be correct. And that would be, at best, the, at best, should the court completely agree with the defendant and their arguments, we should have a remand for an evidentiary hearing on qualified immunity and nothing more. And, yes, that would be outside the scope of what they are granted an interlocutory appeal on. I would also want to highlight page seven of their brief. I would like to say one thing about that. I want to understand what you're really telling me. You're saying to me that based on what's happened in front of Judge Du, that if I don't believe that summary judgment is appropriate on the 1983 claim, the best I can do is remand her to have a qualified immunity hearing rather than a trial? Your Honor, the Because in my book, there's no qualified, if you take my questions, I was saying to her, there's no qualified immunity for your police officers. On the other hand, if you take my questions, I'm suggesting there's nothing to suggest you should have summary judgment. Go tell the jury what you're telling us about both the search, both the detention and the arrest, and let them come back and tell us the law in my book is pretty clear, so I'm on your side. But I'm having a tough time understanding why a jury shouldn't determine, based on the law appropriate at the time, whether there was a violation. And I just want you to answer that question. I will answer that question. The facts and evidence submitted to Judge Du were from the defendants, the police officers, the jury, and the jury's lack of responding to the positive statement of time, which that came from Ms. Goodman. Everything else we have from the defendant's testimony, and that being the case, the summary judgment was especially appropriate in this case. I thank you very much for your time and your interest in our petition, and we'll wait with major breath until we get back to you. Frankly, we thank you for your argument. Very well done. I'll let him go over a little bit. If you want 30 seconds, I'll give it to you. Thank you, Your Honors. In closing, I would just like to point out again that, you know, it's our position that even taking the facts in the light most favorable to Ms. Goodman, that the judge just misapplied the law, that she didn't look at the facts, any of the facts, under a totality of the circumstances scenario. That she also hung her hat, if you will, on the state of the established law by looking at this case as if it were a simple solicitation case where it would be required that you would see a solicitation take place, probable cause analysis, if you will, instead of looking at the hallmarks of criminal activity, which is what Terry v. Ohio tells us. And then lastly, with respect to the issue of the temporary taking of the cell phone and the purse and the removal from the casino floor, those types of things that, again, under established case law, the officers could have believed that it was reasonable for them to do that in the context of this ongoing vice operation and the inherent dangers associated with that type of an operation. Thank you. Thank you. You had more than 30 seconds. I don't want him giving me the business, so thank you very much. I appreciate the additional time. Thank you, Your Honors. All right. Case 13-16751, Goodman v. Las Vegas Metropolitan Police Department is submitted.
judges: N.R. Smith, Owens, Collins